## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION (LAFAYETTE)

MAYUR DEEPAK PATIL; and )
FURORMEDIA, LLC, )
　 )
Plaintiffs, )
　 )
v. ) CAUSE NO. 4:23-CV-16-JPK
　 )
10PM CURFEW, LLC, )
　 )
Defendant. )

## OPINION AND ORDER

Currently before the Court is the Amended Motion to Dismiss filed by Defendant 10PM Curfew, LLC. [DE 21]. Also before the Court is the "Motion To Strike Evidence Submitted With Defendant's Reply Brief Or, In The Alternative, Request For An Evidentiary Hearing Pursuant To L.R. 7-5(b)(1) And Permission To Take Discovery Prior To The Hearing" ("Motion to Strike, or for Discovery/Hearing"), filed by Plaintiffs Mayur Deepak Patil and FurorMedia, LLC. [DE 36]. For the reasons that follow, Defendant's Amended Motion to Dismiss is granted, and Plaintiffs' Motion to Strike, or for Discovery/Hearing is denied.

## BACKGROUND

The following discussion is based on allegations in the complaint and other public documents subject to judicial notice.[1] Nothing stated herein is intended to suggest a finding as to the truth of any of the matters asserted. Alleged facts that may be in dispute are noted where appropriate.

---

[1] *See Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts.").

Mayur Deepak Patil is an individual who, in April 2021, resided in West Lafayette, Indiana. He currently resides in the State of Washington. [DE 1 ¶ 1; *see also id.* ¶ 14]. The other plaintiff in this case—FurorMedia LLC—is a Tennessee limited liability company solely owned by Patil. [*Id.* ¶ 2]. On February 13, 2023, Patil[2] filed a complaint in this district alleging eight counts, each seeking declaratory relief against 10PM Curfew, a California limited liability company with a registered business address in Atwater, California. [*Id.* ¶ 3]. Specifically, the complaint seeks declarations that, in relation to any conduct or activities concerning 10PM, Patil has not (1) violated the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Count I); (2) violated the Indiana Uniform Trade Secrets Act, Ind. Code § 24-2-3-1 (Count II); (3) breached any fiduciary duty (Count III); (4) been unjustly enriched (Count IV); (5) engaged in a conspiracy (Count V); (6) committed fraud (Count VI); (7) violated the takedown notice provisions of the Digital Millennium Copyright Act, 15 U.S.C. § 512 (Count VII); or (8) violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (Count VIII).

About two months after Patil filed this lawsuit, 10PM Curfew filed its own complaint against Patil and FurorMedia in the United States District Court for the Central District of California (hereinafter "the California Action"). 10PM's complaint alleges claims for usurpation of corporate opportunity; breach of fiduciary duty; breach of California's Unfair Competition Law § 17200; misappropriation of trade secrets; conversion; unjust enrichment; fraud-concealment; fraudulent misrepresentation; and violation of California Penal Code § 496.[3] 10PM's complaint also names as defendants two other entities allegedly owned by or associated with Patil: Crunchy

---

[2] For simplicity, the Court may refer to Plaintiffs collectively using Patil's name only.

[3] *See 10PM Curfew, LLC v. Mayur Deepak Patil et. al*, 2:23-cv-2805-MEMF-MRW, Dkt. #1 (Complt., First through Ninth Causes of Action) (C.D. Cal. Apr. 14, 2023).

Media, LLC, a Tennessee limited liability company, and Travly, Inc., a corporation under the laws of the Bahamas with its principal place of business in Canada.[4] Both the California Action and this action arise out of the same set of facts. The Court recites the facts mostly as they are alleged in this case.

Patil is in the business of "curating and growing viewership of social media accounts" to generate advertising dollars for social media platforms. [DE 1 ¶ 8]. Specifically, "Patil locates existing videos and viral content across all social media platforms including Instagram, TikTok and Twitter." [*Id.*]. "Then, after obtaining the rights to use any videos or content, Patil repackages the content into engaging episodes that are distributed to social media companies such as Snapchat and YouTube, who desire such content to provide to their online users which can then generate advertising dollars." [*Id.*]. "When Patil's channels publish episodes on social media platforms, Patil is compensated based on the number of views and engagement driven by the social media platform's users." [*Id.*]. "Patil created Furor Media LLC on January 28, 2020 as the corporate entity under which he would work in social media and provide his expertise in managing, growing and acquiring social medial channels." [*Id.* ¶ 9].

Patil alleges that "10PM Curfew is engaged in the business of social media and advertising," and that, "upon information and belief, [it] has no employees and no office facility," but rather "operates solely through the creative and marketing efforts of owners Razvan Romanescu, Darren Lopes, and independent contractors such as Patil hired on an as needed basis." [*Id.* ¶¶ 10, 11]. 10PM Curfew allegedly contacted Patil in April 2021 "about managing and growing 10PM's social media presence." [*Id* ¶ 10]. "10PM Curfew engaged Patil through his company FurorMedia to discover social media content and assist with the packaging and

---

[4] *See California Action*, Dkt. #1 (Complt., ¶¶ 7 4, 9-10).

distribution of videos for 10PM Curfew to online social media platforms such as Snapchat, and agreed to pay FurorMedia $3,000 per month for these services." [*Id.* ¶ 12]. "10PM paid FurorMedia $3,000 per month from April 2021 to March 2022, with the exception of December 2021, when FurorMedia was paid $8,000, amounting to a total of $38,000 paid to FurorMedia for services to 10PM Curfew, including packaging content and helping with marketing and growth efforts." [*Id.* ¶ 16]. The videos submitted by Patil to 10PM (also referred to as "pilots") included one for a new channel called "Beauty ASMR." [*Id.* ¶ 23]. According to the complaint in this case, 10PM rejected Patil's "Beauty ASMR" pilot video without submitting it to Snapchat, supposedly because a video with a similar concept ("Beauty Central") had previously been rejected by Snapchat when 10PM had presented it to 10PM's contact at Snapchat. [DE 1 ¶¶ 23-24]. Patil alleges that, after 10PM rejected Patil's "Beauty ASMR" video, Patil pitched a similar idea to his own contact at Snapchat using a different video with the same name. Patil's Snapchat contact allegedly approved Patil's pilot for publication, "which ended up being very successful." [*Id.* ¶ 25]. Without going into detail, 10PM's version of what happened with the "Beauty ASMR" video differs from Patil's. As alleged in the California Action, 10PM Curfew never rejected the video; rather, 10PM alleges that Patil falsely represented that he had submitted the "Beauty ASMR" pilot to Snapchat and that Snapchat had rejected it. *See California Action*, Dkt. #1 (Cmplt., ¶¶ 47-49).

10PM ended its relationship with Patil in March 2022. [DE 1 at 1].[5] Thereafter, 10PM "apparently [ ] learn[ed] that Patil had successfully launched the channel/show "Beauty ASMR" and other channels on Snapchat. [*Id.* at 1-2]. On January 20, 2023, 10PM's attorney sent Patil a letter claiming ownership of Patil's work and threatening litigation. [*Id.* ¶ 34; *see* DE 1-3 (January 20, 2023 letter)]. The letter was followed by two additional letters. *See* [DE 1-4 (February 5, 2023

---

[5] *But see* [DE 1 ¶ 26 (alleging that 10PM terminated the relationship in March 2023)].

letter); DE 1-5 (February 10, 2023 letter)]. In this correspondence and in a conversation between 10PM's legal counsel and Patil's legal counsel, 10PM expressly threatened to sue Patil for theft of trade secrets and other statutory and common law torts. [DE 1 at 2].

In response to these threats, on February 13, 2023, Patil filed this action for declaratory relief, alleging that 10PM's threats are "baseless, unfounded and absurd," because "[t]he parties had no agreement governing their relationship or how rejected media created by Patil would be handled." [*Id.*]. According to Patil, as an independent contractor, he "owned any and all content he created, and he was free to create, market and profit" from any ideas rejected by 10PM, such as the idea for a "Beauty ASMR" channel on Snapchat. [*Id.*; *see also id.* ¶¶ 13, 17]. 10PM contests these allegations. According to 10PM, when Patil was working for 10PM, he "personally served as director of Growth," which was a "senior position" that "carried direct responsibility for the development of new marketing channels and [10PM's] relationships with core business partners." [DE 1-3]. 10PM alleges that, in this capacity, Patil "managed other employees and ... served at and also reported to the highest levels of the Company." [*Id.*]; *see also California Action*, Dkt. #1 (Cmplt., ¶ 8 (alleging that Patil was not an independent contractor, and that he was employed by 10PM as "a senior executive, Director of Growth")).

## DISCUSSION

10PM argues, and there is little basis to dispute that, Patil filed this action in anticipation of 10PM suing him.[6] Although Patil was living in Washington by the time he filed this lawsuit, he brought this action in the Northern District of Indiana, asserting that "a substantial part of the

---

[6] *See California Action*, Dkt. #12 (Notice of Pendency of Other Actions or Proceedings–L.R. 83-1.4, at 4-5 (Apr. 24, 2023)); *see also id.*, Dkt. #22-1 (Defs.' Mem. In Support of Motion to Stay, Transfer, or Dismiss, at 6 ("Rather than take [10PM's] threats lying down, Patil called 10PM's bluff by filing suit against 10PM in the Northern District of Indiana, where 10PM first recruited him to perform services[.]").

events or omissions giving rise to 10PM Curfew's alleged legal claims occurred in this district, namely, Plaintiff Patil[']s residence in this district at the time he began performing work for 10PM Curfew and 10PM Curfew's purposeful direction of its activities to engage Patil in this judicial district." [DE 1 ¶ 7]. 10PM argues in its memorandum of law in support of its Amended Motion To Dismiss that Patil's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because the Court does not have personal jurisdiction over 10PM [DE 22 at 6-8], and that it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because Patil cannot show that a case or controversy existed when he filed suit [DE 22 at 9-10]. 10PM Curfew also presents a stand-alone argument on the issue of venue. [*Id.* at 8-9].

"Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter"; but, "there is no unyielding jurisdictional hierarchy" and "there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999). While "subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues." *Id.* at 584. Thus, for example, where "a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." *Id.* at 588. Here, the Court will address all of 10PM's arguments, but ultimately finds that the most compelling reason for dismissal of Patil's complaint is neither Rule 12(b)(1) nor Rule 12(b)(2) but the Court's discretionary authority to decline to exercise its jurisdiction under the Declaratory Judgment Act.

A.   SUBJECT MATTER JURISDICTION

1.   APPLICABLE LAW

"To determine whether subject matter jurisdiction exists, a court may look past the complaint to any pertinent evidence. The complaint's jurisdictional allegations are taken as true, though, unless the defendant offers evidence calling jurisdiction into question." *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 376 (7th Cir. 2019) (internal citation omitted) (citing *Sapperstein v. Hager*, 188 F.3d 852, 855, 856 (7th Cir. 1999)); *see also Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009) (discussing the difference between a facial and factual challenges to jurisdiction). The only evidence cited by the parties in their discussion of subject matter jurisdiction is the correspondence between 10PM and Patil in which 10PM threatened to sue Patil. Since this correspondence is attached to the complaint, 10PM's motion to dismiss on this basis presents a facial challenge to the Court's jurisdiction.[7]

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "However, 'the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction,' and requires an 'independent basis for jurisdiction.'" *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 935 (7th Cir. 2008) (quoting *GNB Battery Techs. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995)). 10PM does not dispute Patil's allegations that the Court has subject matter jurisdiction on the basis of federal question jurisdiction over the claims addressing federal statutes (Counts I, VII, and VIII), and supplemental jurisdiction over the state

---

[7] *See Williamson v. Curran,* 714 F.3d 432, 436 (7th Cir. 2013) (on a motion to dismiss, court may consider documents that are attached to the complaint and documents that are central to the complaint and are referred to in it).

7

law claims (Counts II-VI);[8] or Patil's alternative allegations that the Court has jurisdiction based on diversity of citizenship.[9] Instead, 10PM argues that Patil's allegations do not satisfy the "separate and distinct jurisdictional question of constitutional dimension of whether an 'actual controversy' existed." *GNB Battery Techs.*, 65 F.3d at 620 (internal quotation marks and citation omitted).

"The phrase 'case of actual controversy' in the Declaratory Judgment Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Amling,* 943 F.3d at 377 (quoting *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240 (1937))); *see Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 712 (7th Cir. 2002) ("[A] declaratory action, like any other action, must satisfy Article III, which allows federal courts to act only in the event of actual 'cases and controversies.'"). Declaratory judgment actions present a "case or controversy" when there is "a 'definite and concrete,' 'real and substantial' dispute that 'touches the legal relations of parties having adverse legal interests' and 'admits of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Amling*, 943 F.3d at 377 (quoting *MedImmune*, 549 U.S. at 127). In short, "[t]he declaratory judgment plaintiff must be able to show that the feared lawsuit from the other party is immediate and real, rather than merely speculative." *Hyatt Int'l Corp.,* 302 F.3d at 712. "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Australia, Ltd. v. Nucleonics, Inc*., 495 F.3d 1340, 1344 (Fed. Cir. 2007). "[O]nce that burden has been met, absent further information, that

---

[8] *See* 28 U.S.C. § 1331; 28 U.S.C. § 1367; *see also* [DE 1 ¶ 5].

[9] *See* 28 U.S.C. § 1332(a); *see also* [DE 1 ¶ 6; DE 37].

jurisdiction continues. The burden of bringing forth such further information may logically rest with the party challenging jurisdiction, but the actual burden of proof remains with the party seeking to invoke jurisdiction." *Id.* at 1344-45 (emphasis and internal citations omitted).

    2.    ANALYSIS

    *a.    Case or Controversy requirement*

Patil argues that 10PM threatened him with litigation, and therefore that there was "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Amling*, 943 F.3d at 377 (quoting *MedImmune*). Patil cites to the correspondence attached to the complaint in which 10PM threatened to sue Patil. But "the threat of suit, however immediate, is not by itself sufficient for the invocation of the federal power to issue a declaratory judgment: as other courts have noted, the Declaratory Judgment Act 'is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse.'" *Hyatt Int'l Corp.,* 302 F.3d at 712 (internal quotation marks and citation omitted). "It was possible that [10PM's] repeated threats to sue [Patil] … were no different from those of many other disgruntled co-venturers. If anything, [10PM's] delay in instituting [its] threatened suit suggests that the prospect of litigation was unclear." *Id.*

10PM argues that its threats to sue had not reached such a concrete point that Patil legitimately needed a declaration of its "rights and other legal relations" to go forward with its business. The Court somewhat agrees with that assessment. The "usual declaratory judgment pattern" is one "under which the 'natural' defendant wants to proceed with a business opportunity—e.g., the production of widgets—but it is impeded because of a lack of clarity as to its legal rights, fearing something like a possible patent infringement suit." *Id.* at 711. As the

Seventh Circuit explained in *Cunningham Brothers, Inc. v. Bail*, 407 F.2d 1165 (7th Cir. 1969), "[t]he primary purpose of th[e] [Declaratory Judgment] Act is 'to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued.'" *Id.* at 1167-68 (citations omitted). Here, Patil has not argued that he would suffer any harm had he waited for 10PM to sue. Without further development of the record on this point, the Court would likely have to conclude that the only harm Patil would have suffered had he waited to be sued would have been "the normal uncertainty a defendant experiences while the statute of limitations is running and there is a possibility of a later obligation to pay money damages." *Hyatt Int'l Corp.*, 302 F.3d at 711.

"Early resolution of a threat of litigation, in a friendly forum, is no doubt of value to a potential defendant, but the statute requires an 'actual' controversy." *Id.* at 711-12. Patil's evidence that "the feared lawsuit from" 10PM Curfew was "immediate and real, rather than merely speculative," was "thin, at least until [10PM] proved [Patil's] prediction right by filing" the California Action. *Id.* at 712. Given that filing, however, the question of whether an actual case or controversy between Patil and 10PM exists "has become somewhat academic." *Id.* While 10PM's filing of the California Action does not resolve the original jurisdictional issue,[10] it does mean that currently there is no case or controversy as to Patil's claims for declaratory relief concerning the Defend Trade Secrets Act, the Indiana Uniform Trade Secrets Act, any alleged conspiracy, the Digital Millennium Copyright Act, and RICO. Even if 10PM previously threatened to sue under these statutes, it has now laid its cards on the table and none of those claims are included in the

---

[10] "[I]t remains true that later events cannot control the propriety of the district court's jurisdiction: [o]nly the actions of the declaratory defendant known to the declaratory plaintiff at the time the action is commenced can be considered in determining whether such a threat exists." *Hyatt Int'l Corp.*, 302 F.3d at 712 (internal quotation marks and citations omitted).

California Action. "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint [was] filed." *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). "It is not enough that there may have been a controversy when the action was commenced if subsequent events have put an end to the controversy, or if the opposing party disclaims the assertion of countervailing rights. A case is moot when the issues presented no longer are 'live' or the parties no longer have a legally cognizable interest in the outcome." Wright & Miller, 10B Fed. Prac. & Proc. Civ. § 2757 (4th ed.) (footnotes omitted). Accordingly, Counts I, II, V, VII, and VIII must be dismissed as moot.

Still, "if only one of several issues becomes moot, the remaining live issues satisfy the constitutional requirement of a case or controversy and the action can proceed." *Id.* (footnote omitted). Accordingly, Patil's declaratory claims in Count III (breach of fiduciary duty), Count IV (unjust enrichment), and Count VI (fraud), would continue to present a live controversy if they were alive and ripe at the time Patil filed this lawsuit. And, as previously discussed, whether they were alive and ripe at that time is uncertain on the current record. As the Seventh Circuit explained in *Hyatt Int'l Corp.,* 302 F.3d at 711, "if the record requires further development" on the question whether the plaintiff at the time suit was filed was "impermissibly seeking an advisory opinion," dismissal on Article III case or controversy grounds "would be premature."

### b.    Discretionary rule

The Court finds that further delay in these proceedings to develop the record on the issue of whether a case or controversy existed over the non-moot claims at the start of this lawsuit is unnecessary, because a court does not have to "decide that a declaratory judgment action presents a 'case of actual controversy' before exercising its discretion not to decide it." *Amling*, 943 F.3d at 379 (citing *Sinochem Int'l Co. v. Malaysis Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007),

quoting *Ruhrgas AG*, 526 U.S. 574, for the proposition that, "[a]mong different 'threshold grounds for denying audience to a case on the merits,' there is no mandatory priority"). And here, regardless of the answer to the case or controversy question, the Court declines to exercise its jurisdiction to hear the non-moot declaratory relief claims.[11]

The Declaratory Judgment Act states the court "*may* declare the rights and other legal relations of any interested party, … not that it *must* do so." *Haze v. Kubicek*, 880 F.3d 946, 951 (7th Cir. 2018) (quoting *MedImmune*, 549 U.S. at 136 (emphasis in original; internal citation and

---

[11] Another potential ground for dismissal of the non-moot declaratory claims is for the Court to decline to exercise supplemental jurisdiction over those claims (which are all based on state law) after having dismissed the moot declaratory relief claims based on federal law. *See, e.g., Cowgill v. City of Marion,* 127 F. Supp. 2d 1047, 1054 (N.D. Ind. 2000) (citing *Wright v. Associated Ins. Cos., Inc.,* 29 F.3d 1244, 1250 (7th Cir. 1994) (stating that, "[i]n the usual case in which all federal claims are dismissed before trial, the balance of the[ ] [relevant] factors will point to declining to exercise jurisdiction over any remaining pendent state-law claims")). However, as previously noted, the complaint also alleges diversity jurisdiction as an alternative to supplemental jurisdiction over Patil's state law claims. The problem is that the complaint's factual allegations are insufficient for the Court to determine whether it has jurisdiction under 28 U.S.C. § 1332(a). The complaint alleges that FurorMedia is a limited liability company "solely owned" by Patil. [DE 1 ¶ 2]. Therefore FurorMedia is a citizen of the same state as Patil. *See Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) ("the citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members"). But the complaint alleges that Patil "is currently a *resident* of the State of Washington" [DE 1 ¶ 1], and diversity jurisdiction over an individual turns on domicile, not residency. *See Midwest Transit, Inc. v. Hicks*, 79 F. App'x 205, 208 (7th Cir. 2003). Moreover, even assuming that Patil and FurorMedia are citizens of Washington, the complaint also fails to allege facts from which the Court can identify the citizenship of 10PM Curfew. Instead, the complaint alleges that 10PM Curfew is a "California Limited Liability Company with a registered business address of 1120 Commerce Drive, Suite 139, Atwater, California 95301." [DE 1 ¶ 3]. As far as the Court can tell, the record does not contain any allegations or evidence identifying the members of 10PM Curfew and the state where each of those members was domiciled on the date this lawsuit was filed. *See Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007) (jurisdictional statement for LLC "must identify the citizenship of each of its members . . . and, if those members have members, the citizenship of those members as well"). In light of these pleading deficiencies, a jurisdictional show cause order would be in order to properly show that the parties are diverse. Nevertheless, as previously discussed, the Court has discretion to rule on the basis of other non-merits grounds without resolving the diversity issue first, *see Ruhrgas AG*, 526 U.S. at 574, and, to avoid further delay in the resolution of this case, chooses that path.

quotation marks omitted)). "This statutory language has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Amling*, 943 F.3d at 379 (internal quotation marks and citations omitted). As the Seventh Circuit has explained, "Declaratory Judgment actions serve an important role in our legal system insofar as they permit prompt settlement of actual controversies and establish the legal rights and obligations that will govern the parties' relationship in the future. On the other hand, there is no doubt that the declaratory judgment mechanism can be abused." *Hyatt Int'l Corp.,* 302 F.3d at 711 (internal citation omitted). "A district court may properly consider the inequity of permitting a declaratory plaintiff to gain precedence in time and forum by filing a declaratory action which is *merely* anticipatory of a parallel state action." *Goldberg v. Providence Hosp.,* No. 89 C 7263, 1989 WL 153542, at *2 (N.D. Ill. Nov. 16, 1989) (emphasis in original) (internal quotation marks and citation omitted). "[D]eclaratory relief is discretionary in a strong sense … probably because it is often used to seize the forum from the natural plaintiff." *Hyatt Int'l Corp.*, 302 F.3d at 711. For this reason, "the granting of a declaratory judgment rests in the sound discretion of the trial court exercised in the public interest .... The courts properly decline relief if the declaratory judgment procedure, and the federal forum, is being used for 'procedural fencing' or 'in a race for res judicata.'" *Goldberg,* 1989 WL 153542, at *2 (quoting 10A C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE, § 2759 (1983)).

  10PM argues that this case is merely anticipatory of the California Action. This argument mirrors 10PM's argument in the California Action opposing Patil's motion in that case seeking to stay, transfer, or dismiss the California Action under the "first-to-file" rule.[12] That rule permits a

---

[12] *See California Action*, Dkt. #22-1 (Defs. Mem. In Supp. of Motion To Stay, Transfer, or Dismiss, at 6) (July 5, 2023) (arguing that 10PM filed "this copycat action, alleging claims that it could have

district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. *See Starin Mktg., Inc. v. Swift Distrib., Inc.,* No. 2:16-CV-67-TLS-JEM, 2017 WL 218663, at *2 (N.D. Ind. Jan. 19, 2017). 10PM responded to Patil's first-to-file argument by citing an exception to the general rule, whereby the rule is not applied when the first-filed party jumps ahead to file an anticipatory suit seeking declaratory relief once the defendant indicates an intent to sue.[13] Here, 10PM argues the Court does not have subject matter jurisdiction over Patil's declaratory relief claims for the same reason.

The Court agrees with 10PM on this issue insofar as its discretion to exercise its declaratory judgment jurisdiction is concerned.[14] Patil has not argued or shown that he filed this declaratory judgment action to avoid the accrual of further damage, nor has he "demonstrate[d] how the allowance of the instant declaratory judgment action would effectuate the purposes of the statute and thereby afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." *Cunningham Bros.,* 407 F.2d at 1168 (internal quotation marks and citation omitted). Rather, Patil "seems to be attempting to try issues or determine the validity of defenses in" the California action. *Id.* While "a declaratory judgment action should not be dismissed solely because a more traditional remedy is available[,] … when the traditional remedy provides the

---

—and should have—alleged as counterclaims in the Indiana Action"); *see also id.,* Dkt. #12 (Notice of Pendency of Other Actions or Proceedings–L.R. 83-1, at 5-6) (Apr. 24, 2023).

[13] *See California Action*, Dkt. #13 (Plaintiff's Notice of Pending Action and Response to Notice And Request For Relief of Defendants, at 4) (Apr. 25, 2023).

[14] Patil's motion in the California action to dismiss, transfer, or stay is currently not scheduled for hearing until October 26, 2023. *See California Action*, Dkt. #27 (Amended Text Only Entry). Neither party has suggested that this Court should defer to the California court in ruling on whether to exercise its discretion to assume subject matter jurisdiction over Patil's declaratory judgment complaint, even though its ruling would likely impact Patil's motion in the California Action. Nor is the Court aware of any reason why it should defer.

parties with the procedural safeguards required by the law to insure the availability of a proper remedy, the courts, in exercising their discretion, may properly dismiss the declaratory judgment action." *Id.* at 1169 (footnote omitted). Patil has an adequate remedy in the California Action. Indeed, "[d]eclaratory judgment should not be granted to try particular issues without settling the entire controversy." *Sears, Roebuck & Co. v. Am. Mut. Liab. Ins. Co.*, 372 F.2d 435, 438 (7th Cir. 1967). And given the differences between this case and the California action, which includes claims and additional defendants not present in this lawsuit, the entire controversy cannot be resolved in this proceeding.

Although Patil filed this lawsuit first, the Seventh Circuit "does not rigidly adhere to a first-to-file rule." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc*., 626 F.3d 973, 980 (7th Cir. 2010). Instead, "where the parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief—[the Seventh Circuit] ordinarily give[s] priority to the coercive action, regardless of which case was filed first." *Id.* (citing *Trippe Mfg. Co. v. Am. Power Conversion Corp*., 46 F.3d 624, 629 (7th Cir. 1995) (affirming dismissal of first-filed declaratory judgment action in favor of later-filed coercive action); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc*., 819 F.2d 746, 749–50 (7th Cir. 1987) (finding that the "mere fact" that a plaintiff filed its action first "does not give it a 'right' to choose a forum"); and *Tamari v. Bache & Co. (Lebanon),* 565 F.2d 1194, 1203 (7th Cir. 1977) (teaching that there is no rigid chronological rule but that the timing of filing may be one factor affecting discretion)). The Seventh Circuit's "approach is not unique in this respect," *Rsch. Automation, Inc.,* 626 F.3d at 981, and indeed "courts refuse to enforce the first to file rule where forum shopping motivated the first-filed action or the first-filed action constitutes an 'improper anticipatory filing' made under threat of an imminent suit and asserting the mirror-image of that suit in another district." *Schwarz v. Nat'l Van*

*Lines, Inc.*, 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004) (citation omitted).[15] As the Seventh Circuit explained, "[t]his type of behavior only exacerbates the risk of wasteful litigation." *Rsch. Automation, Inc.*, 626 F.3d at 980.

Given the circumstances in which this case was filed, retaining jurisdiction of this first-filed suit is inconsistent with the purposes of the Declaratory Judgment Act. *See Cunningham Bros.,* 407 F.2d at 1167 ("[T]o compel potential … plaintiffs to litigate their claims at a time and in a forum chosen by the alleged tort-feasor would be a perversion of the Declaratory Judgment Act[.]").[16] Based on the allegations of the complaint, this is *not* a case where "one party [has] continually accus[ed] the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit." *Tempco Elec. Heater Corp.,* 819 F.2d at 749. Allowing

---

[15] *See, e.g., Tempco Elec. Heater Corp.,* 819 F.2d at 747, 750 (declining to apply first-to-file rule where the defendant sent the plaintiff a cease-and-desist letter, the plaintiff wrote back refusing to comply with the defendant's cease-and-desist demands, the defendant responded that it had no choice but to file suit, and the plaintiff responded by immediately filing a declaratory suit against the defendant); *Midland States Bank v. Baxter Senior Living, LLC*, No. 3:22-CV-190-DWD, 2022 WL 1773770, at *3 (S.D. Ill. June 1, 2022) ("In light of the Seventh Circuit's rejection of the 'first-to-file' rule, its stated preference for coercive actions over declaratory judgment actions, and the suspect timing of [the plaintiff's] filing, the Court gives no weight to the fact that [the plaintiff] filed this case before [the defendant] filed the Alaska case."); *Chaban Wellness LLC v. Sundesa, LLC,* No. 15-CV-21497, 2015 WL 4538804, at *3 (S.D. Fla. July 27, 2015) (court declines to exercise jurisdiction over declaratory judgment action based on anticipatory filing exception to first-filed rule where the plaintiff "was aware that litigation was imminent and, instead of having to litigate this dispute in Utah, … sought to get a 'head start' in the 'race to court' by filing its declaratory judgment action in its preferred forum"); *AT&T Intellectual Prop. II v. aioTV, Inc.*, No. 1:13-CV-1901-RWS, 2014 WL 4052803, at *4 (N.D. Ga. Aug. 13, 2014) (finding there was "sufficient evidence in the record to determine that Plaintiffs were motivated by forum-shopping concerns and filed the instant action in anticipation of the suit later filed by Defendant"); *Eli's Chi. Finest, Inc. v. The Cheesecake Factory, Inc.,* 23 F. Supp. 2d 906, 907, 909 (N.D. Ill. 1998) (finding improper anticipatory filing where plaintiff received defendant's cease-and-desist letter and, without responding, filed suit).

[16] "It should be noted that filing an action which does not 'serve the purposes' of the Declaratory Judgment Act is not synonymous with filing an action for an 'improper purpose' under Rule 11." *Goldberg,* 1989 WL 153542, at *3.

Patil to proceed with this declaratory judgment action would force 10PM, the allegedly injured party, to litigate claims that it "may not have wanted to litigate at a time that might [have] be[en] inconvenient to [it] or which might [have] precede[d] [its] determination of the full extent of [its] damages, and in a forum chosen by [Patil,] the alleged tortfeasor." *Cunningham Bros.*, 407 F.2d at 1169. "The Declaratory Judgment Act is not a tool with which potential litigants may secure a delay or choose the forum." *Schwarz*, 317 F. Supp. 2d at 833. Accordingly, the Court declines to assert jurisdiction to entertain Patil's non-moot requests for declaratory relief.

### B.   PERSONAL JURISDICTION

The Court's decision to decline to exercise its discretionary authority under the Declaratory Judgment Act means that it is not necessary to reach the question of whether its assertion of personal jurisdiction over 10PM would violate 10PM's constitutional rights to due process. But the briefing on 10PM's motion to dismiss focused primarily on that issue, and 10PM's personal jurisdiction arguments raise a serious constitutional issue. Therefore, the Court will proceed to address the personal jurisdiction issue as a *possible* alternative basis for its ruling.[17] Ultimately, dismissal will rest solely on the Court's ruling under the Declaratory Judgment Act.

#### 1.   APPLICABLE LAW

"[A] complaint need not include facts alleging personal jurisdiction. However, once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack

---

[17] Ordinarily, if a court determines that it lacks subject matter jurisdiction, it may not go on to reach the question of personal jurisdiction. *See Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 639 (7th Cir. 2021) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). But the Court did not decide that it lacks "case or controversy" subject matter jurisdiction over the non-moot declaratory judgment claims; instead it declined to exercise its discretionary declaratory judgment jurisdiction over those claims. Therefore, under the rule in *Ruhrgas AG.*, 526 U.S. 574, discussed previously, the Court has the power to go on to decide personal jurisdiction as an alternative basis for dismissal, even though it has not definitively resolved the Article III case or controversy question.

of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (internal quotation marks and citation omitted). When the court rules on the motion without a hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *Id.* "In evaluating whether the prima facie standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (internal quotation marks and citations omitted); *see also Felland v. Clifton,* 682 F.3d 665, 672 (7th Cir. 2012) ("The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised on a motion to dismiss, the plaintiff need only make a prima facie showing of jurisdictional facts."); *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983) (a court may determine whether exercising personal jurisdiction is proper in a "preliminary proceeding" prior to a trial on the merits in which the court "may receive and weigh affidavits"; the plaintiff meets its burden of proof "by a prima facie showing" and "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record").

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)).[18] Indiana's long-arm provisions are found in Indiana Trial Rule 4.4(A). *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 965 (Ind. 2006). Trial Rule 4.4(A) authorizes a court to exercise jurisdiction over persons "on any basis not inconsistent with the Constitutions of this

---

[18] The Court applies state law to the personal jurisdiction question in both diversity cases, *see Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.,* 536 F.3d 757, 760 (7th Cir. 2008), and federal question cases, *see Walden*, 571 U.S. at 283 (quoting Fed. Rule of Civ. Proc. 4(k)(1)(A)); *see also Erickson v. Neb. Mach. Co.,* No. 15-CV-01147-JD, 2015 WL 4089849, at *2 (N.D. Cal. July 6, 2015); *Morris Material Handling, Inc. v. KCI Konecranes PLC*, 334 F. Supp. 2d 1118, 1121–22 (E.D. Wis. 2004).

state or the United States." Ind. Tr. Rule 4.4(A)(1). Thus, Indiana "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause." *LinkAmerica Corp.,* 857 N.E.2d at 967. Due process is measured by the familiar *International Shoe* test, which requires that the defendant have "minimum contacts" with the forum state, and that exercising jurisdiction over the defendant is consistent with "traditional notions of fair play and substantial justice." *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Minimum contacts" can give rise to either specific or general jurisdiction. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–415 (1984). In this case, Patil relies on specific personal jurisdiction.[19]

Specific jurisdiction grows out of "the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284 (internal quotation marks omitted) (quoting *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 1977))). There are "three essential requirements" for the court to have specific jurisdiction: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673

---

[19] General jurisdiction exists when the defendant's contacts "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (quotation marks and citation omitted). The facts here clearly do not give rise to general jurisdiction, and Patil does not suggest otherwise. Although Patil does not explicitly state whether he is relying on principles of general or specific jurisdiction, he is plainly making a specific jurisdiction argument when he asserts that "10PM Curfew's contact with Patil was deliberate, targeted and related to the basis of this lawsuit." [DE 32 at 12]. Therefore, the Court does not need to address 10PM's arguments in its reply brief concerning general jurisdiction. *See* [DE 35 at 3-5].

(internal citations omitted). The focus of the parties' arguments here is on the purposeful direction/availment issue.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (internal citations and footnotes omitted). The requirements of "purposeful direction" or "purposeful availment" furthers these principles. "The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 474-75.

"Purposeful availment" and "purposeful direction" "are two different concepts," the former "most often used in suits sounding in contract" and the latter in suits sounding in tort. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see Felland*, 682 F.3d at 674 ("[T]he nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue."). "For example, personal jurisdiction in a breach-of-contract suit generally turns on whether the defendant purposefully availed himself of the privilege of conducting business in the forum state," but "[w]here a plaintiff's claim is for an intentional tort, the inquiry focuses on whether the conduct underlying the claim[ ] was purposely directed at the

forum state." *Id.* (internal quotation marks and citations omitted).[20] To the extent that Patil's declaratory judgment claims are based on the existence or non-existence of a contract, this "is an action sounding in contract," and the Court's "minimum contacts inquiry" should "focus[ ] on whether [10PM] purposefully availed [it]self of the privilege of conducting business within [Indiana] through the purported oral contract." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (internal citation omitted). But Patil's claims go beyond the issue of whether there was an enforceable contract; those claims seek declarations as to whether Patil committed a number of business torts. In resolving the personal jurisdiction issue in the context of a declaratory judgment action, courts look to the facts of the underlying case. *See GEICO Gen. Ins. Co. v. M.O.*, No. 21-2164-DDC-ADM, 2021 WL 4892918, at *6-7 (D. Kan. Oct. 20, 2021). The business tort claims in the underlying case may be related to the services Patil provided to 10PM while in a contractual relationship with 10PM, but they also involve Patil's independent conduct vis a vis internet content he allegedly provided to Snapchat and others after that contractual relationship ended.

### 2.   ANALYSIS

Patil argues that 10PM can be haled into court in Indiana without violating 10PM's due process rights because 10PM entered into a business relationship with Patil when Patil was living in Indiana. Specifically, Patil points to the complaint's allegation that he was a resident of West Lafayette, Indiana at the time 10PM entered into an agreement regarding the services that Patil and FurorMedia would provide to 10PM. *See* [DE 32 at 12 (citing Complt. ¶ 14)]. While Patil

---

[20] *See also Schwarzenegger,* 374 F.3d at 802-03 (9th Cir. 2004) ("A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there[,]" whereas "[a] showing that a defendant purposefully directed his conduct toward a forum state … usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." (internal citations omitted)).

admits that he currently resides in Washington [DE 1 ¶ 1], he argues that his "subsequent move to Washington State does not change the fact that this Court's jurisdiction was established in Indiana based on the relationship of parties that gave rise to the nucleus of operative facts to be litigated in this lawsuit." [DE 32 at 14 n.1]. While Patil is correct as to the assertion that the Court's exercise of personal jurisdiction over 10PM is not *foreclosed* by Patil's subsequent move to Washington, the Court does not necessarily agree with the second part of Patil's argument that personal jurisdiction over 10PM is established in Indiana by virtue of the fact that he lived there when his business relationship with 10PM began.

It is well established that "an individual's contract with an out-of-state party *alone* can [not] automatically establish sufficient minimum contacts in the other party's home forum." *Burger King*, 471 U.S. at 478 (emphasis in original) (further stating that "[t]he Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests, or on 'conceptualistic ... theories of the place of contracting or of performance'" (internal citations omitted)). Instead, the Supreme Court has "emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' It is these factors— prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479 (internal citations omitted); *see Purdue Rsch. Found.*, 338 F.3d at 781. The defendant's contacts with the forum state "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship *centered* there." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. ___, 141 S. Ct. 1017, 1025 (2021)

(emphasis added; citations omitted). For instance, the Supreme Court has "upheld the assertion of jurisdiction over defendants who have …enter[ed] a contractual relationship that 'envisioned *continuing* and *wide-reaching contacts*' in the forum State." *Walden*, 571 U.S. at 285 (quoting *Burger King*, 471 U.S. at 479-80) (emphasis added)).

Patil cites *Sanders Kennels, Inc. v. Lane*, 153 N.E.3d 262 (Ind. Ct. App. 2020), in arguing that, "by reaching out to Patil, a content provider located in Indiana, and establishing an indefinite business relationship with Patil and FurorMedia in Indiana, 10PM Curfew purposefully availed itself of the privilege of conducting business in Indiana." [DE 32 at 13-14]. But *Sanders Kennels* does not appear to be on point, as it involves purposeful direction or availment whereby the defendant was "exploit[ing] [ ] a market" in the forum, *Ford Motor Co.*, 141 S. Ct. at 1025, and thereby "caus[ing] economic activity within" that state, *Sw. Rsch. Inst. v. Cal. Fueling, LLC*, 509 F. Supp. 3d 656, 666 (W.D. Tex. 2020). Specifically, the plaintiff, an Indiana resident, contracted with the defendant, a Georgia corporation, to purchase dogs from and provide dog breeding services for the defendant. *Sanders Kennels,* 153 N.E.3d at 265. After finding the dogs supplied unsuitable for breeding, the plaintiff sued the defendant in Indiana for breach of contract, fraud, theft, and conversion. *Id*. The Indiana Court of Appeals had "little trouble concluding that [the defendant] created sufficient contacts with Indiana to establish specific jurisdiction" when it entered into an ongoing business relationship with the plaintiff. *Id.* at 271.

Patil argues the present case is similar to *Sanders Kennels* because the parties anticipated an "ongoing business arrangement" when they entered into their agreement. The difference, however, is that the on-going business relationship in *Sanders Kennels* was one that had *"'future consequences'"* in Indiana arising out of the sale of the dogs to an in-state resident. *Id.* (quoting *Burger King Corp.*, 471 U.S. at 573 (emphasis in original)). In contrast, the factual allegations in

the complaint here do not reveal any contemplated future in-state consequences of the parties' business relationship, nor do they suggest 10PM's "exploitation of a market" in Indiana or a contractual relationship "centered" in Indiana. *Ford Motor Co.*, 141 S. Ct. at 1025. Instead, the facts alleged show that Patil's location in Indiana was not significant to the parties' business relationship and the business arrangement itself had no specific in-state impact in the way that the plaintiff's location in *Sanders Kennels* did. The business relationship described in the complaint here may have been on-going, but it did not involve 10PM "do[ing] business in or caus[ing] economic activity within [Indiana]." *Sw. Rsch. Instit.,* 509 F. Supp. 3d at 666 (finding no personal jurisdiction over defendant who entered into contract with Texas resident).

Patil cites two provisions of the Indiana long-arm provision as supporting personal jurisdiction over 10PM. The first provision cited by Patil permits the exercise of jurisdiction based on "doing any business" in the state. Ind. R. Trial P. 4.4(A)(1). In *Wolf's Marine, Inc. v. Brar*, 3 N.E.3d 12, 17 (Ind. Ct. App. 2014), the Indiana Supreme Court considered the three cases cited by Patil for the proposition that an Indiana court can assert personal jurisdiction over an out-of-state defendant pursuant to the "doing any business" language of Ind. R. Trial P. 4.4(A)(1) based on the defendant having contracted with an in-state plaintiff.[21] The court said that one of the three cited cases (*Attaway*) involved "significantly more contact than merely entering into a contract with an Indiana resident." *Wolf's Marine, Inc.,* 3 N.E.3d at 17. The same is true of two additional Indiana

---

[21] *Compare Wolf's Marine, Inc.*, 3 N.E.3d at 16 ("Dr. Brar contends that this court has on several occasions held that a decision by an out-of-state defendant to enter into a contract with an Indiana resident was sufficient to allow Indiana to exercise personal jurisdiction over that defendant. For this proposition Dr. Brar cites *Attaway v. Omega*, 903 N.E.2d 73 (Ind. Ct. App. 2009), *Mid–States Aircraft Engines, Inc. v. Mize Co., Inc.,* 467 N.E.2d 1242 (Ind. Ct. App. 1984), and *Woodmar Coin Center, Inc. v. Owen*, 447 N.E.2d 618 (Ind. Ct. App. 1983)." (internal citation omitted)); *with* [DE 32 at 13 (citing *Attaway*, *Mid–States Aircraft-Engines, Inc.*, and *Woodmar Coin Center, Inc.*)].

cases cited by Patil (which are not discussed in *Wolf's Marine*).[22] As to the remaining two cases (*Mid–States* and *Woodmar*), the court stated it was "not convinced" that they could be "read for the simple proposition … that merely entering into a contract with an Indiana resident subjects an out-of-state defendant to suit in Indiana," and that, "[e]ven if those cases did so hold, they were decided before *Burger King* clearly held to the contrary." *Id.*

The second long-arm provision cited by Patil allows the exercise of personal jurisdiction where the defendant "supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state." Ind. R. Trial P. 4.4(A)(4). This case does not concern facts that could potentially fall within this provision. It involves an in-state plaintiff (Patil) who supplied or contracted to supply services to an out-of-state defendant (10PM), as opposed to an out-of-state defendant who supplies or contracts to supply services to an in-state plaintiff as specified in the long-arm provision. Therefore, Rule 4.4(A)(4) also does not appear to support Patil's argument for personal jurisdiction.

---

[22] *See* [DE 32 at 12 (citing *In re Est. of Baker*, 837 N.E.2d 603, 608-09, 612 (Ind. Ct. App. 2005) (in petition by executor to recover assets allegedly belonging to an Indiana probate estate, court holds that defendant "was doing business in Indiana under Ind. Trial Rule 4.4" when he engaged in numerous financial transactions on behalf of the deceased involving credit union accounts and a certificate of deposit with an Indiana bank, and that such acts satisfied the requirements of due process)]; [DE 32 at 13 (citing *Breneman v. Slusher*, 768 N.E.2d 451, 459, 460-61 (Ind. Ct. App. 2002) (where "[the defendant] called [the plaintiff], an Indiana resident, and arranged to meet with him in Indiana … to discuss [the defendant's brother's] liability to [the plaintiff] pursuant to a contract between [the plaintiff] and [the defendant's brother's company] under which [the plaintiff's] company would perform logging activities on land located in Indiana," and [the defendant] asked [the plaintiff] to delay further legal action against [the defendant's brother's company] for breaching the contract, and told [the plaintiff] that he … would do what he could to help," court holds that the defendant's actions "constituted 'doing any business' within the meaning of T.R. 4.4(A)(1)," and "were sufficient minimum contacts to establish the Indiana court's specific personal jurisdiction")].

The Court also finds it likely that asserting personal jurisdiction over 10PM solely based on Patil having resided in Indiana in that moment when he first began working for 10PM,[23] would contravene the principles established by the Supreme Court in *Walden*, which rejected the argument that the "minimum contacts" inquiry was satisfied by a defendant's "knowledge of [the plaintiff's] strong forum connections." 571 U.S. at 289 (internal quotation marks and citation omitted). The Supreme Court held in *Walden* that relying solely on the out-of-state defendant's knowledge of the plaintiff's connection to the forum state "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* (citation omitted). That result is improper, the Court said, because "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285. "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id*.

Courts have observed that *Walden* "altered the landscape of personal-jurisdiction analysis," *Paragon Bioteck,, Inc. v. Altaire Pharm. Inc.,* 3:15-cv-189-PK, 2015 WL 4253996, at *1 (D. Or. July 10, 2015), by making clear that "[d]ue process requires that a defendant be haled into court in a forum State based on *his own affiliation* with the State, not based on the '*random, fortuitous, or attenuated*' contacts he makes by interacting with other persons affiliated with the State." *Walden,* 571 U.S. at 286 (emphasis added) (quoting *Burger King*, 471 U.S. at 475 (internal quotation marks omitted)). *Walden* stands for the proposition that the "mere fortuity that one company happens to be a[n] [in-state] resident" is not enough to confer jurisdiction. *Sw. Rsch. Instit.,* 509 F. Supp. 3d at 666. Nor is it enough even when "coupled with that company's unilateral performance," *id.,* i.e.,

---

[23] Patil does not allege or attest to how long he remained in Indiana after he first entered into a business relationship with 10PM. Although Patil should have submitted that information if he felt it helped support jurisdiction over 10PM, even if he remained in Indiana for the duration of his relationship with 10PM, the Court does not find that would be sufficient to assert personal jurisdiction over 10PM.

even if Patil performed some or all of his contractual duties while living in Indiana. Patil's argument for jurisdiction here is based solely on the fact that he was present in Indiana when his business relationship with 10PM began (and also may have continued thereafter). But this argument "improperly attributes" Patil's forum connections to 10PM, and "also obscures the reality that none of [10PM's, or, perhaps more properly since this is a declaratory judgment action, Patil's] challenged conduct had anything to do with [Indiana] itself." *Walden*, 571 U.S. at 289.

The allegations of the complaint show no contacts between 10PM and Indiana beyond the fact that 10PM entered into a contract with Patil when he resided in Indiana. In reaching out to Patil in Indiana, however, 10PM "created a contract with [Patil] specifically, not the state of [Indiana]," *Infusion Ptns. v. Otono Networks, Inc.*, No. 3:16-cv-2288-AC, 2017 WL 1959225, at *8 (D. Ore. Apr. 12, 2017). "The whole purpose of the" contract was for Patil to develop videos "that would be sent to" 10PM for distribution to Snapchat and other internet media entities, all located out-of-state. *Sw Rsch. Instit.*, 509 F. Supp. 3d at 666. Given the nature of the alleged business relationship, there is no reason to believe that 10PM "care[d] that [Patil] was located in [Indiana] or that [Patil] would [perform under the contract] in [Indiana]." *Id.*; *cf. XMission, L.C. v. Fluent LLC,* 955 F.3d 833, 847 (10th Cir. 2020) ("Purposeful direction cannot be satisfied if the website host, web poster, or email sender simply wants as many responses as possible but is indifferent to the physical location of the responder."). Thus, 10PM's contact with Indiana was incidental and not performed for the purpose of having their consequences felt in Indiana. Regardless of whether 10PM knew that Patil was located in Indiana, asserting jurisdiction over 10PM solely because of Patil's location in Indiana at the time the contract was entered would likely violate due process. *See, e.g., Scott v. Domus Constr. & Design, Inc.*, No. 3:21-cv-623-BEN-AHG, 2021 WL 5505888, at *8 (S.D. Cal. Nov. 24, 2021) ("[T]he Supreme Court has made clear that a

defendant may not be forced to litigate in a forum solely because the defendant knew the plaintiff resided in the forum. Accordingly, Defendant's mere knowledge that Plaintiff and his business resided in the Southern District is not enough to subject Defendant to jurisdiction in this District." (internal citation omitted)).

Even from the perspective of this being a declaratory suit, 10PM sent its demand letter to Patil at an address in *Washington*. *See* [DE 1-3]; *GEICO Gen. Ins. Co.,* 2021 WL 4892918, at *8 (observing that the defendant "didn't even send her demand for coverage into [the forum]"). 10PM later corresponded with Patil's counsel in Indiana, but it was Patil's unilateral decision to retain an attorney in this district although he resided at the time in Washington that caused 10PM to do so. No allegations of the complaint suggest that 10PM created a "substantial connection" to Indiana or "connect[ ] [10PM] to [Indiana] in a meaningful way." *Walden*, 571 U.S. at 284, 290. Thus, Patil's presence in Indiana when the parties entered into their business relationship is "precisely the sort of unilateral activity … that cannot satisfy the requirement of contact with the forum State." *Id.* at 291 (internal quotation marks and citation omitted).

Finally, even if the complaint's allegations satisfied the requirement of purposeful direction or availment and the requirement that the underlying claims arose out of or relate to 10PM's purposeful direction or availment activities, 10PM could defeat jurisdiction by presenting a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see World-Wide Volkswagen Corp.,* 444 U.S. at 292 (minimum requirements inherent in the concept of "fair play and substantial justice" may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities). Unreasonableness is assessed by considering "(1) the burden on the defendant, (2) the forum State's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient

and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Burger King*, 471 U.S. at 477. Indiana's interest in resolving this dispute and Patil's interest in resolving this controversy in this forum both appear to be minimal because Patil no longer resides in the state. Thus, for reasons similar to why the Court declines to exercise declaratory judgment jurisdiction, it would seem that 10PM would also have an argument that, even if the "minimum contacts" requirement were satisfied, jurisdiction over it in Indiana would be unreasonable.[24]

### 3. PATIL'S MOTION FOR DISCOVERY

Patil's Motion to Strike or for Discovery/Hearing seeks to strike evidence submitted by 10PM with its reply brief in support of its Amended Motion to Dismiss. In the alternative, Patil asks the Court to allow jurisdictional discovery followed by an evidentiary hearing on the issue of whether the Court has personal jurisdiction over 10PM.

The Court finds it unnecessary to definitively resolve Patil's motion given that dismissal is based at this time on the Court's discretion under the Declaratory Judgment Act. However, should the issue remain pertinent for any reason, the Court tends to agree with 10PM's argument that the

---

[24] 10PM raises this issue indirectly, in arguing that the Northern District of Indiana is an improper venue for this litigation because "a substantial part of the events or omissions giving rise to the claim" did not occur here. *See* 28 U.S.C. § 1391(b). 10PM also cites 28 U.S.C. § 1404(a), which authorizes the court to transfer a case to another district "for the convenience of parties and witnesses and in the interest of justice." Although 10PM states that it "is *not* requesting a transfer of venue" [DE 22 at 9 (emphasis added)], it asserts that this "case belongs [in] [the] Southern District of California" because that is "where [10PM] resides, the witnesses are located, and [Patil's] misconduct originated" and where Patil "usurped [10PM's] business opportunities with Snap, Inc." [*id.*]. It is not clear why 10PM raised these arguments when it did not ask for relief of any kind based on improper or inconvenient venue. Likely because of this lack of clarity, Patil does not respond on these points in his brief in opposition to the motion to dismiss. For this reason, the Court only mentions the issue without resolving it.

Romanescu Declaration and attached exhibits were responsive to arguments made by Patil in his opposition brief, and thus constituted fair reply. Moreover, "as a general rule, motions to strike are disfavored because they potentially serve only to delay." *PSG Energy Grp., LLC v. Krynski*, No. 1:18-CV-03008-TWPTAB, 2020 WL 2059944, at *3 (S.D. Ind. Apr. 29, 2020). Rather than litigate whether the reply arguments or evidence submitted therewith were within the bounds of a proper reply, Patil could have simply requested permission to file a surreply and/or filed a counter-declaration. *See id.* In addition, the Court's personal jurisdiction analysis relies solely on the allegations of the complaint, and the failure of those allegations to establish a prima facie case for personal jurisdiction. As a result, striking the reply evidence would not affect the Court's analysis.

Insofar as Patil's alternative requests for discovery and an evidentiary hearing are concerned, Patil fails to discuss the standard applicable to his request. "At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). At this time, Patil has not made a colorable prima facie showing of jurisdiction such that discovery would be warranted. *See Guaranteed Rate, Inc. v. Conn,* 264 F. Supp. 3d 909, 929 & n. 25 (N.D. Ill. 2017); *John Crane Inc. v. Simon Greenstone Panatier Bartlett, APC*, 2017 WL 1093150, at *12 (N.D. Ill. Mar. 23, 2017); *Siswanto v. Airbus,* 153 F. Supp. 3d 1024, 1032 (N.D. Ill. 2015); *Telemedicine Sols. LLC v. WoundRight Techs., LLC,* 27 F. Supp. 3d 883, 900 (N.D. Ill. 2014).

Nor does Patil make any proffer of what limited discovery requests he would issue. *Siswanto,* 153 F. Supp. 3d at 1032. To the extent that he states generally what the issues for discovery would be, those include: (1) where Defendant operated its business; (2) Defendant's contacts with Indiana; (3) whether Defendant knew that Patil was working in Indiana; and

(4) where Patil was working on certain dates. [DE 36 at 1]. The last issue is one solely within Patil's personal knowledge, and therefore Patil does not need discovery on it. The fact that Patil has not provided this information to the Court through the submission of his own declaration suggests he is playing hide the ball. Patil also has personal knowledge on the other matters mentioned, yet again he did not expand upon the complaint's allegations that touch upon those matters through additional facts presented in a declaration. Rather than shed light on those issues as he could have done without discovery, he either has withheld relevant information, or he has no reason to believe relevant information exists that might be discovered and is merely on a fishing expedition. Either way, under controlling Supreme Court precedent, whether 10PM knew that Patil was working in Indiana and where Patil was working on certain dates, do not appear to be relevant to the personal jurisdiction inquiry. If Patil has a factual basis for believing relevant matters in addition to the complaint's allegations (which were assumed true by the Court) might be uncovered in discovery, he needed to have presented what those matters were in either his opposition brief or his motion for discovery. Without any showing that jurisdictional discovery would serve a useful purpose, Patil has given the Court no basis for granting his request for discovery. *See Sanderson v. Spectrum Labs, Inc.*, 248 F.3d 1159 (Table), 2000 WL 1909678, *3 (7th Cir. 2000).

## CONCLUSION

For the reasons discussed above,

1.      Plaintiffs' Motion To Strike, or for Discovery/Hearing **[DE 36]** is **DENIED.**

2.      Defendant's Amended Motion To Dismiss **[DE 21]** is **GRANTED**.

3.      This case is **DISMISSED WITHOUT PREJUDICE**.

So ORDERED this 17th day of October, 2023.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT